# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | Nos. 14-323-2 |
| DONALD WOMACK, Sr. | : | 14-496-2 |
| | : | |
| | : | |

**McHugh, J.**                                                     April 21, 2021

<u>**MEMORANDUM**</u>

This is a motion for compassionate release under 18 U.S.C. § 3582. ECF 1235 and 303. Petitioner Donald Womack was twice convicted by juries of major drug offenses while he was on supervised release for conspiracy to rob a competing drug dealer. With an offense level of 34 and a criminal history Category of III, Mr. Womack faced a guideline range of 188 to 235 months, and given his prior record, and prominent role in the conspiracies charged here, he was sentenced to 216 months. Taking into account credit for good conduct, he has served approximately 86 months. He now seeks early release because of the COVID pandemic based upon his suffering from obesity. Having reviewed the record, including detailed medical records supplied by the Government, ECF 1285, the motion will be denied.

The statute requires "extraordinary and compelling reasons" in order to grant release. § 3582 (c)(1)(A) (i). I cannot say that Mr. Womack's medical condition is one that rises to that level.

According to the Government, Mr. Womack has a Body Mass Index (BMI) of 33.3. *See* Govt. Resp. 4, ECF 1278. I note that Mr. Womack's motion represents that his BMI is lower, at 32, *See* Mot. Compassionate Release 1. Regardless, this may place him at greater risk of severe illness or

1

death should he become ill with Covid 19.[1]  But this sole risk factor is offset in three respects.  First, obesity is categorized into three classes, and Mr. Womack falls into the least severe category.[2]  Second, Mr. Womack contracted, and fortunately recovered from the virus, apparently without severe effects.  *See* ECF 1285, at 1-5, 40.  Although this does not entirely eliminate the risk of re-infection, it significantly ameliorates it.  *See United States v. Carter,* No. CR 15-228-1, 2021 WL 427110, at *1 (E.D. Pa. Feb. 8, 2021).  Third, Mr. Womack was offered a Covid vaccine, but refused, without any apparent medical justification for such refusal.  *See* EFC 1285, at 38.  "[U]nexplained refusal to accept a COVID-19 vaccination when offered negates [his] otherwise compelling medical reasons for release." *United States v. Jackson,* No. CR 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021); *see also United States v. Bautista*, No. CR 19-24-1, 2021 WL 1264596 (E.D. Pa. Apr. 6, 2021).

Although Mr. Womack's fears about the pandemic are understandable, the Court of Appeals had made clear that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020).  Admittedly, the BOP's efforts to prevent infection have not always succeeded, as evidenced by Mr. Womack's infection and others at FCI-Allenwood, where he is serving his sentence.  Currently, however, no inmates are positive there,[3] and fortunately there have been no fatalities.  *See* Govt. Resp. 7.  And

---

[1] CENTERS FOR DISEASE CONTROL AND PREVENTION, PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity.

[2] CENTERS FOR DISEASE CONTROL AND PREVENTION, DEFINING ADULT OVERWEIGHT AND OBESITY, https://www.cdc.gov/obesity/adult/defining.html.

[3] FEDERAL BUREAU OF PRISONS, COVID-19, https://www.bop.gov/coronavirus/ (last visited April 19, 2021).

although Mr. Womack has refused the vaccine, between the two facilities at Allenwood, close to 400 staff and 1000 inmates have been vaccinated,[4] providing him with additional protection against re-infection.

Even when a defendant shows extraordinary and compelling reasons for release, courts must consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether early release is merited. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(2). After analyzing these factors, even if Mr. Womack had a more compelling risk factor, I would still conclude that his sentence should not be reduced.

While on federal supervised release, Mr. Womack, working directly with the leader of the drug trafficking organization, engaged in two separate conspiracies to obtain cocaine to redistribute in the City of Chester. Juries convicted him in these two cases, and the Government then decided not to proceed with a third serious trafficking charge arising out of the same investigation. *See USA v. Dorsey et al.*, Criminal Action No. 14-516-3.

In fashioning a sentence, I placed significant weight on Defendant's prior involvement in armed robbery. I was also struck by the fact that after serving over 11 years in federal prison, shortly after beginning a term of supervised release in October 2014, Mr. Womack immersed himself in continued criminal acts ravaging his hometown.

---

[4] FEDERAL BUREAU OF PRISONS, COVID-19, https://www.bop.gov/coronavirus/ (last visited April 19, 2021).

Defendant's release from federal prison at this juncture would not reflect the seriousness of his crimes, promote respect for the law, constitute adequate punishment, nor, given his history, likely deter him.

For all these reasons the motion will be denied.

    /s/ Gerald Austin McHugh
United States District Judge